# VENDOR AND PURCHASER — FRAUDULENT REPRESENTATIONS.

[Lucas Circuit Court, January 28, 1897.]

Haynes and King, JJ.

## GEORGE DOUGLASS v. MOSES PLOTKIN.

MISREPRESENTATION AS TO SIZE AND EXTENT OF LAND SOLD BY VENDOR, EFFECT

Where one purchases property represented to be of a certain size and extent, which representations prove to be untrue, such purchaser may have such abatement in the price, or such a recovery on his own part, if he shall have paid the purchase price, as will make him good for that which he has lost, because the property is not the same in size and extent as it was represented to be, although the representations may have been innocently made.

ERROR.

KING, J.

The defendant in error, Moses Plotkin, recovered a judgment in the court of common pleas against George Douglass for about $425, which judgment this proceeding is brought to reverse.

The claim made below by the plaintiff there, as set forth in his amended petition, is, that about November 8, 1889, he purchased of Douglass at his request a strip of land 20 feet wide and 100 feet deep; that as an inducement to buy it, and with the intent to deceive and defraud him, the defendant represented that the land was 100 feet deep and 20 feet wide. The plaintiff relied on this believing it to be true, and did, upon the faith of the representations, purchase the said land and paid for it in time the price agreed upon. He alleges that the representation was untrue in fact, and was so known by the defendant when he made it; that it was made falsely and fraudulently, for the purpose of inducing the plaintiff to enter into the purchase of said property, that

the land in fact was but 80 feet in depth and was so known to the defendants. The damage claimed was for the difference in value of the land on account of the shortage. There was an answer, denying the allegations of fraud, and some things set up by way of defense which do not affect the question here. The case went to trial, and resulted in a verdict for the plaintiff, as before stated.

It is claimed here that the verdict is contrary to law and to the evidence; that there was error in the charge of the court; also that certain evidence was admitted which ought not to have been. These objections I can consider altogether.

The evidence indicated that the defendant made the representations stated in the petition, to-wit: that the lot was 100 feet·deep. It further showed that after the representations were made, the plaintiff put the matter in the hands of an attorney, to see that the papers should be properly drawn, and he with the attorney went to the office of the defendant Douglass, and there a written contract was entered into, which provided that the plaintiff, purchasing the lot, should pay a small sum down—I think $200—and the balance in small payments. At the office there was some discussion between Mr. Douglass and the attorney and the plaintiff about the depth of the land, and there is no doubt from the evidence that Mr. Douglass again reiterated the fact to be that the land was 100 feet in depth. The attorney for the plaintiff expressed some doubt in his own mind about that being the fact. He said he had looked at some atlas, and he thought it was not 100 feet in depth, but didn't say how deep he thought it was. He testified upon the trial, however, that from the map he looked at he thought it was about 90 feet deep. Mr. Douglass showed him a map hanging on the wall of the room as proof of the statement which he had been making that the land was 100 feet deep, and all agreed that by the map it was 100 feet deep. The contract was thereupon drawn up. It did not express the width or depth of the property, but described it by some other appropriate description. It is conceded that at the time of the purchase there was an alley in the rear of the lot, though not in apparent existence. It existed somewhere among the records of the city, but never had been opened, or was not at that time. It was a rough sort of territory, and the property had upon it an old house. Mr. Douglass had, at the time of the first talk, and before the contract was written, pointed out the property to Mr. Plotkin as being his, and showed him a house and a barn which he claimed were upon it. It turned out, when the city came to open up the alley, that the barn was in the alley and not upon the lot, and it had to be torn down and removed. The barn, probably, was not of much value, but it was one of the landmarks which was shown there as indicating what land there was.

That is about what this proof shows, and from it we think it fairly appears that representations were made by Mr. Douglass as to the depth of the lot. It also appears that Mr. Douglass, at the time he made those representations, believed them to be true; we think it appears that he had no reason to suppose that the lot was less than 100 feet in depth. There was some evidence to show that it was represented to Mr. Douglass, verbally, when he bought the lot, that it was 100 feet deep, and this map, which he relied upon, and which Mr. Plotkin's attorney saw, apparently showed the lot to be of that depth. So then both parties— Mr. Douglass from such facts as he possessed, and Mr. Plotkin from what Mr. Douglass told him and from the appearance of Mr. Douglass'

map—believed that the lot was 100 feet deep. That is about the way these facts came to the jury.

One difficulty we have had in the case has arisen because of the state of the pleadings. The petition avers that all this was done fraudulently and knowingly by Mr. Douglass, and with intent to deceive and defraud; and it has been questionable, in our minds, whether the action, under that form of the petition, could be maintained. It has been argued here very strenuously, and cases have been cited to show, that in an action for deceit it must appear from the testimony that the party charged made the representations with intent to deceive, either with knowledge that they were false, or was grossly negligent in making them, not caring whether they were true or false—making them simply for the sake of selling his property. There are a number of cases which sustain that position; but we are inclined to think that the doctrine as laid down by the supreme court of Ohio is, that in an action to recover the purchase price of a piece of land, the purchaser may set up as a counterclaim to it the damage that he may have sustained by reason of the fact that the land which he actually received was not equal in quantity to that which he undertook to buy, and which the grantor agreed to sell.

It is argued that this case would not fall within that rule, where the representation made is simply as to the length or the breadth of the land a thing which might be easily ascertained by inspection, as to whether it was correct or not; that the only cases that have been sustained are those where some object has been pointed out as a boundary. We think it appears here that this case possesses those elements: first, the representation that the lot was 100 feet deep; and second, that it contained upon its rear end, and within the limits of its lawful boundaries, a barn which was the only mark that the purchaser could observe when he bought this lot, to know where the rear end of the lot was. As I have said, the barn was not on the rear end of the lot, but was upon a public street, and had to be taken down and destroyed. So that there was a monument to which his attention was directed when he bought this land which has proven to be untrue. And it is admitted over and over again in the record, that Mr. Douglass said the lot was 100 feet deep, and, as I have said, the testimony shows fairly that he believed it to be that.

Under those circumstances can Plotkin either set up in opposition to an action brought by the vendor as a counterclaim, his damages, or can he bring a seperate action? We think the case in Ohio will sustain either of those positions. The first of those that is relied upon by the defendant in error here, and in which we are pointed out certain distinctions between that case and the one at bar, is that of *Mulvey* v. *King*, 39 O. S. 491, which is to some extent a modification of the doctrine requiring proof of knowledge of the falsity of the representations. It is there said on page 494:

"It may be considered as well settled in this state, that an action for damages caused by misrepresentation cannot ordinarily be maintained, without proof of actual fraud, or such gross negligence as amounts to fraud. When, however, a person claims the benefit of a contract into which he has induced another to enter by means of misrepresentations, however honestly made, the same principles cannot be applied. It is then only necessary to prove that the representation was material and substantial, affecting the identify, value, or character of the subject

7 Dec. 11

matter of the contract, that it was false, that the other party had a right to rely upon it, and that he was induced by it to make the contract, in order to entitle him to relief either by rescission of the contract or by recoupment in a suit brought to enfore it."

Then a little later, in 40 O. S. 168, *Pierce* v. *Tiersch*, the court held that,

"In an action by mortgagee against mortgagor upon a note and mortgage given for the purchase money of the premises, the mortgagor may, as a defense, set up a counterclaim for damages by reason of the fraud of the mortgagee, in concealing from him material facts as to the situation and extent of the premises."

The fact concealed was, that a porch upon one side of the house which appeared to be within the line of the lot, was not within the lot, but in fact projected six feet into the street, without express representation that the house and porch were all in the limits of the lot, by the grantor; and the purchaser bought without any knowledge that the porch projected into the street. In the course of the opinion in that case the court uses this language:

" Furthermore, in an action against the mortgagor for the purchase money, his right to set up a counter-claim for any excess in price through the vendor's misrepresentations of the extent of the property would be the same, whether such misrepresentations were wilful or innocent."

This is a declaration that it does not make any difference whether the vendor intended to deceive, or whether he knew the representations were false, the purchaser in a suit brought by the vendor, might set up and recoup the damages that he had sustained by reason of the failure of the property to be the same in extent as it had appeared, or as it had been represented to be. In the case in 40 O. S. there was a mere appearance: there was no representation in the case. In connection with the clause of the opinion which I have just read (and it is a very important clause) the court cite a case in 45 Mich., *Baughman* v. *Gould*, page 481, in which the court say, after stating the proposition involved in the case,

" We are not able to assent to either of these propositions. For the purpose of recoupment it is quite immaterial whether, as a question of morals, Gould was or was not at fault. The right to recoup was not dependent on it. There being in fact a misrepresentation, though made innocently, its deceptive influence was as effective, and the consequences to Baughman as serious in respect to actual damages as though it had proceeded from a vicious purpose. The result as a fraud on Baughman, in contemplation of law, and it entitled him to contend in Gould's action for the purchase money that the damage should be thrown on the latter."

A number of cases are cited to that clause of the opinion. So that statement of the supreme court of Michigan has received the assent and approval of the supreme court of Ohio. And if that be so, than we have before us a case in which that doctrine can be applied: for, if that be the law, then it is true that the purchaser, Mr. Plotkin, is entitled to a rebate of the price which he agreed to pay for this property, if an action were brought against him to recover that price, although Mr. Douglass did not intend to deceive him, although he believed that at the time he spoke of the extent of this property that it was just as large as he said it was. But can Mr. Plotkin then, after he has paid for the property, and the

deed has been executed and delivered, himself maintain an action? We are inclined to think he can. The courts held as long ago as 16 O. S., 145, that the right of the mortgagor and purchaser to set up a counter-claim, when he was sued upon the mortgage and notes given, for the purchase money, was clear.

It is said that that was so because the counter-claim came within the definition prescribed in the statute relating to counter-claims. What is the definition of a counter-claim then and now in the statute?

"The counter-claim * * * must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of the contract or transaction as set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action."

One of the elements of it is, it must be a claim upon which a several action can be maintained and judgment had. So, then, if the contract has been executed, we know of no reason why he may not sue. That doctrine is expressly stated in 32 Mich., 305, where the action was brought by the purchaser of the property for its loss. So we think from these decisions that it is the law of Ohio that the purchaser of the property may have such abatement in the price, or such a recovery on his own part if he shall have paid the price, as will make him good for that which he has lost, because the property is not the same in size and extent as it was represented to be, although the representations may have been innocently made.

If that be so, then we think the plaintiff was entitled to recover in this case, although that was not the case he made in his petition. His petition is more than that: he charges actual fraud. But to maintain his right of action under these circumstances, it was not necessary that he should prove actual fraud. He may prove less, and still be able to recover.

If that is true, then the charge of the court which is excepted to is not erroneous, although, upon some certain views of this case, it might have included more than was necessary for the court to say. The request excepted to is,

"If the jury shall find that the defendant, in making the sale to the plaintiff, misrepresented the extent and boundaries of the lot fronting on Canton avenue; that there was a considerable deficiency between the size and extent to such parcel of land as represented and what it actually contained, which the defendant knew, or under all the surrounding circumstances ought to have known at the time of making such representations, and that the plaintiff was misled and deceived by such representations; the plaintiff will be entitled to recover in this case, whether the representations were wilful or innocent."

We think that that charge would have been proper, under the doctrine in 40 O. S., 45 Mich. and 32 Mich., which I have cited, if the court had omitted from it the clause "Which the defendant knew, or under all the surrounding circumstances ought to have known," since in those cases knowledge is not a necessary ingredient to a right of action. So that the charge containing that clause was more favorable to the plaintiff in error than he had a right to expect, if the facts in this case were as he claims they were a case of mutual mistake.

I have undertaken to treat this substantially as if the claim of the plaintiff in error was correct as to all these facts: that these parties were **simply mistaken.** Yet there is evidence in the record, I am free to say,

from which the jury might be justified in finding that this representation as to the length of this lot was made under such circumstances as that the plaintiff in error himself ought to have known what was the truth about it, and therefore be liable, under the doctrine stated in 37 O. S., as if he had actually intended to deceive.

It is complained that the verdict was excessive. We think that the plaintiff below was entitled to recover in this action whatever the jury found from the evidence in the case were his actual damages; and there is some evidence here from which I think the size of the verdict can be sustained.

The other question is as to the admission of evidence. It is a close question whether evidence of the character excepted to should be admitted. It was the testimony of a man of the name of Marsh, who conversed with Mr. Douglass after the execution of the contract and of the deed. He heard a talk between Douglass and Plotkin at the office of Douglass, at a time when Plotkin came into the office and said to Douglass that he had been notified by the city to move his barn; that his barn was in the alley; that he had had the lot surveyed, and it was only 80 feet deep. Mr. Douglass said "That can't be so; that lot is 100 feet deep." He reiterated that two or three times. Looking at that testimony from one point of view, would make it competent as an admission from which the jury might infer his previous knowledge and intent in making the statement which had been proved. We would not be willing to say that it was incompetent if it did not contain any evidence of an admission of the previous contract or of the representations entering into the previous contract. Still, we hardly think it would be prejudicial. There is no dispute in this record but that Mr. Douglass did say that this lot was 100 feet deep. The excuse for that made and urged by him is, that he believed it. We think that was so. Then it could not, in any wise, we think, have prejudiced him, or added anything to the plaintiff's right to recover, if Mr. Douglass had said this not only before but after the contract. On the contrary, he reiterated this time and again. It might be a circumstance from which it could be argued, and from which the jury might find, that Mr. Douglass acted in good faith.

We think this judgment should be affirmed, with a certificate of reasonable cause for prosecuting this petition in error.

*George A. Bassett* and *James & Beverstock*, for Defendant in Error.
*C. E. Sumner* and *C. W. Everett*, for Plaintiff in Error.